**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **WALGREEN CO.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**COLLEGIUM PHARMACEUTICAL, INC.,**<br><br>**Defendant.** | **Civil Action No. 26-11242-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**MURPHY, J.**

This is an action for breach of contract between Plaintiff Walgreen Co. ("Walgreens"), a pharmacy store chain, and Defendant Collegium Pharmaceutical, Inc. ("Collegium"), a pharmaceutical manufacturer. Walgreens alleges Collegium breached the terms of Collegium's return policy by refusing to accept returned products in a manner consistent with that policy. In addition to breach of contract, Walgreens also claims breach of the implied covenant of good faith and fair dealing, violation of Mass. Gen. Laws ch. 93A, § 11, and unjust enrichment. For the foregoing reasons, the Court will grant in part and deny in part Collegium's motion to dismiss.

## I. Background

### A. Factual Background

The Court draws the following facts from Walgreens's complaint, Dkt. 1 ("Complaint" or "Compl."), and accepts them as true for the purposes of the instant motion.

Walgreens is an Illinois-based pharmacy and retailer, which dispenses pharmaceutical products directly to consumers at its thousands of drugstores across the United States. *Id.* ¶ 2.

Collegium is a Massachusetts-based pharmaceutical manufacturer, *id.* ¶ 3, which marketed two products purchased by Walgreens, Xtampza and Nucynta, *id.* ¶¶ 16–17. Collegium began actively marketing the products to Walgreens as early as 2015. *Id.* ¶¶ 12, 15, 17. Collegium kept in frequent contact with Walgreens since 2015, by requesting purchases for specific doctors, asking about inventory at particular pharmacies, and assigning specific employees to manage the Walgreens relationship. *Id.*

In the pharmaceutical industry, retailers like Walgreens often do not purchase drugs directly. *Id.* ¶¶ 7, 21. Instead, they purchase products in bulk from wholesalers, also known as distributors. *Id.* Cencora, Inc. ("Collegium's Distributor"), was the distributor that purchased Xtampza and Nucynta directly from Collegium. *Id.* ¶ 27. Walgreens, in turn, purchased the drugs from Collegium's Distributor. *Id.* ¶ 20.

As drugs approach their expiry date, manufacturers like Collegium often "provide for the return or destruction of the medications." *Id.* ¶ 8. Collegium outlined its specific instructions regarding product returns in a returned goods policy (the "Return Policy"). *Id.* ¶ 24; *see also* Dkt. 26 at 6–7 (the "Return Policy"). As relevant here, the Return Policy provided that Collegium would "accept returns of products 'within six (6) months of expiration' but the products, 'cannot be out of date by more than one (1) year.'" Compl. ¶ 28; *see also* Dkt. 26 at 6. The Return Policy additionally required "pre-authorization" from Collegium for all returns. *Id.* ¶ 29.

When drugs are returned to manufacturers, the United States Drug Enforcement Agency ("DEA") requires the receiving party—in this case, Collegium—to fill out a DEA document known as Form 222. *Id.* ¶ 39. Form 222 provides the DEA with information about the controlled substances being returned and the parties engaged in the return process. *Id.* Because of the complexity of some returns, another set of market participants, known as reverse distributors, exist

to “facilitate the return and credit process.” *Id.* ¶¶ 8–9. This includes providing a signed Form 222 on behalf of the manufacturer. *Id.* ¶ 39. Here, Walgreens could not return any product to Collegium unless Collegium or its reverse distributor, Integrated Commercialization Solutions, LLC (“ICS”), provided a signed Form 222. *Id.*

As early as 2018, Collegium and Walgreens “discussed the applicability of the Return Policy” to Collegium products in Walgreens’s possession. *Id.* ¶ 25. Collegium representatives emailed Walgreens a copy of the Return Policy on January 24, 2018. *Id.* ¶ 19; *see also id.* ¶ 25. Around the same time, Collegium agreed that Walgreens could make returns through Walgreens’s own reverse distributor, Inmar RX Solutions, Inc. (“Walgreens’s Reverse Distributor”). *Id.* ¶¶ 25, 35. Pursuant to the Return Policy, credit for completed returns were “issued through” Walgreens’s Reverse Distributor. Dkt. 26 at 31. Walgreens pharmacies collected unused products “more than three months before [their] expiration date[s] and sent the [p]roducts to Walgreens’[s] return facility.” *Id.* ¶ 49. The products were subsequently transferred to Walgreens’s Reverse Distributor, which would complete the final return to Collegium “through ICS” once the Form 222s were completed. *Id.* ¶¶ 50–51. Such was the relationship between Walgreens and Collegium for “years,” whereby Walgreens would make returns through Walgreens’s Reverse Distributor, and ICS, acting as Collegium’s “agent”, would provide Form 222s to process those returns. *Id.* ¶¶ 32, 41, 46.

“Beginning after the start of the COVID pandemic,” Walgreens alleges Collegium, “through ICS,” began frustrating Walgreens’s product returns by delaying or failing to issue Form 222s. *Id.* ¶ 48. In some cases, Walgreens and Walgreens’s Reverse Distributor did not receive completed Form 222s for over two years, delaying the finalization of its returns. *Id.* ¶¶ 52, 54. Due to the delays, it was “impossible for Walgreens to return the medications within a year after

the expiration date of the [p]roduct, as required by the Return Policy." *Id.* ¶ 48. Walgreens alleges that both ICS and Collegium acknowledged ICS's failure to timely issue Form 222s. *Id.* ¶¶ 53, 55.

Starting in late 2021, Collegium tried to reassure Walgreens that it would "address the issue." *Id.* ¶ 56. Collegium also informed Walgreens that it was "following up internally and with ICS." *Id.* ¶ 57. In "late 2021 and early 2022," the parties developed a plan to "'burn down' the backlog of returns," by accelerating Form 222 processing. *Id.* ¶ 59. ICS "was unable to meet those increased goals" in 2022, and the backlog grew. *Id.* ¶ 60. All the while, Collegium continued to assure Walgreens that "the issue was being addressed." *Id.* ¶ 61.

On October 28, 2022, Collegium representatives told Walgreens's Reverse Distributor that it "would send an authorization to destroy [p]roducts that were still sitting at [Walgreens's Reverse Distributor] waiting for return." *Id.* ¶ 63. Collegium allegedly said that it "would accept and acknowledge the destroyed [p]roducts as having been returned and would agree to credit Walgreens accordingly." *Id.* But after destruction, Collegium did not issue credit to Walgreens for much of the destroyed products.[1] *Id.* ¶ 64. The backlog continued "over the next several years." *Id.* ¶ 66. In total, the value of the returns Collegium "should have accepted and refunded or credited" is $14,321,229.99. *Id.* ¶ 1.

[1] Walgreens alleges that Collegium originally provided approval to destroy products "for which return had been requested prior to September of 2022 and which still had not been accepted for return." Compl. ¶ 64. Later, however, Collegium refused to issue credit to Walgreens based upon the "date of [Walgreens's Reverse Distributor's] request for return authorization" instead pegging the relevant date to the date of destruction. *Id.* This rendered "much of the destroyed [p]roduct ineligible for a credit." *Id.*

### B. Procedural Background

Walgreens originally sued Collegium on June 12, 2025, in the United States District Court for the Northern District of Illinois for breach of the Return Policy.[2] Dkt. 26 at 15–26. On February 18, 2026, the court dismissed the case for lack of personal jurisdiction. *See generally Walgreen Co. v. Collegium Pharm. Inc.*, 2026 WL 458451 (N.D. Ill. Feb. 18, 2026). Walgreens then filed its Complaint in this Court on March 12, 2026. *See generally* Compl.

Walgreens raises four claims against Collegium: breach of contract (Count I), *id.* ¶¶ 70–77; breach of the implied covenant of good faith and fair dealing (Count II), *id.* ¶¶ 78–81; unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 11 ("Chapter 93A") (Count III), *id.* ¶¶ 82–87; and unjust enrichment (Count IV), *id.* ¶¶ 88–92.

Collegium filed its motion to dismiss on May 1, 2026. Dkt. 24; *see also* Dkt. 25 ("Mem."). The Court held a hearing on August 6, 2026, and took the motion under advisement.

## II. Legal Standard

Courts analyzing claims under Federal Rule of Civil Procedure 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, a plaintiff need not demonstrate that he is likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United*

[2] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). The Court also considers Defendant's exhibits, *see generally* Dkt. 26, to the extent that they are "sufficiently referenced" in the Complaint, *Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025).

*States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. <u>Discussion</u>

### A. <u>Count I: Breach of Contract</u>

Walgreens alleges Collegium's failure "to provide credit for the returns of Xtampza and Nucynta for which Walgreens sought Form 222s in a timely fashion" breached the terms of the Return Policy. Compl. ¶ 74; *see also id.* ¶¶ 70–73, 75–77. Walgreens further alleges that "Walgreens and Collegium contracted for Walgreens to return any unused medications consistent with the terms of Collegium's written Return Policy." *Id.* ¶ 71. As proof of the alleged contract, Walgreens points to 2018 correspondence between its representatives and Collegium's representatives, in which it claims Collegium's representatives "professed they understood and agreed to" the Return Policy. *Id.* ¶ 19; *see id.* ¶ 25. In response, Collegium argues that Walgreens's breach of contract claim fails for a simple reason: no contract exists between them. Mem. at 16–18. The Court agrees that, based upon the pleadings, Walgreens fails to establish a contractual relationship where none plainly exists.

To plead a valid "breach of contract claim under Massachusetts law, a plaintiff must demonstrate (1) that an enforceable contract existed, (2) the defendant breached that contract, and that (3) the plaintiff suffered damages." *Thomas v. Liv Grp., Inc.*, 791 F. Supp. 3d 200, 217 (D. Mass. 2025). An enforceable contract requires "an offer, acceptance, and an exchange of

consideration or a meeting of the minds." *DMB Fin. LLC v. Symple Lending LLC*, 2022 WL 1805480, at *7 (D. Mass. Jun. 1, 2022); *see also Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000) ("[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement. . . . [And] [t]he parties must . . . have progressed beyond the stage of 'imperfect negotiation.'"). Here, Walgreens has failed to allege an offer, a "meeting of the minds," or any valid consideration.

The January 2018 correspondence provides no evidence Collegium made an offer to Walgreens or that Walgreens assented to its terms. *See* Compl. ¶ 24 ("The terms of Collegium's Return Policy are not negotiated."). Walgreens "has not presented any evidence that the parties negotiated over any terms at all." *Boyle v. Int'l Truck & Engine Corp.*, 2002 WL 823810, at *2 (D. Mass. Apr. 23, 2002); *see also Walgreen Co.*, 2026 WL 458451, at *4 (noting that Walgreens "clarif[ied] the procedures that must be followed under the policy rather than amending its terms"). The Return Policy *pre-existed* Collegium and Walgreens's relationship. *Id.* ¶ 18 ("Walgreens purchased the Products from Collegium based on its knowledge of Collegium's Return Policy."); *see also* Dkt. 26 at 28 ("Can you send me your company's most current Returns Goods Policy which will be in effect for 2018? We want to ensure we have the most current version on file to optimize compliance."). When Walgreens reached out to Collegium about product returns, Collegium passed along the Return Policy. Compl. ¶ 19; *see also Walgreen Co.*, 2026 WL 458451, at *4 ("[T]he emails and phone calls between the parties took place *after* the policy existed." (emphasis in original)). Nothing in the email chain indicates Collegium intended to make an offer. Nor could it have been an offer, because as Collegium made clear in its January 2018 communication with Walgreens, the Return Policy did not apply to retailers. Dkt. 26 at 35–36

("We do not have a return goods policy that covers expired returns from retailers. Collegium's return goods policy is for authorized distributors and we do not work directly with any retail pharmacies."). At best, the January 2018 email, Compl. ¶ 19, merely informed Walgreens of the particulars of the Return Policy, but it did "not constitute an agreement between the parties," *Orozco v. NewRez, LLC*, 2021 WL 11645691, at *8 (D. Mass. Jun. 9, 2021).

The lack of consideration is even more obvious. By Walgreens's own admission, it did not purchase the products directly from Collegium. Compl. ¶ 20. Instead, it purchased the products from its distributor, Collegium's Distributor, which originally purchased the products from Collegium.[3] *Id.* Walgreens asserts that this arrangement is the typical course of business in the pharmaceutical industry. *Id.* ¶ 21. That may be so, but a business relationship and a contractual relationship are not one and the same. Even where there is a longstanding business relationship, consideration is still required to create an enforceable contract. *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 201 (1st Cir. 2004) ("A contract must have consideration to be enforceable and '[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor.'" (quoting *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 142 (1st Cir. 1998))).

Here, where Walgreens did not accept an offer to be bound by the terms of Return Policy—a policy which Collegium explicitly stated does not apply to retailers like Walgreens—and did not offer any form of consideration, an enforceable contract is not plausibly alleged. Absent a valid contract between Collegium and Walgreens, Count I fails to state a claim and is accordingly dismissed.

---

[3] Walgreens notes that the Return Policy "would have [been] part of the contracts by which [Collegium's Distributor] purchased the Products from Collegium." Compl. ¶ 27.

**B. <u>Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>**

Walgreens alleges Collegium breached the implied covenant of good faith and fair dealing by "intentionally conduct[ing] itself in a manner that frustrated the intent of the parties and made it impossible for Walgreens to make returns within a year of expiry of the medications." Compl. ¶ 80; *see also id.* ¶¶ 78–79, 81. However, "[h]aving concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005). "In other words, the implied covenant of good faith and fair dealing governs the conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." *Id.* Accordingly, Count II fails to state a claim and is therefore dismissed.

**C. <u>Count IV: Unjust Enrichment</u>**

In the alternative, Walgreens alleges that Collegium was unjustly enriched by its actions. Walgreens contends that, by and through ICS, Collegium slow-walked the Form 222 return authorizations and, in so doing, ensured Walgreens's returns fell outside the window of time permitted by the Return Policy. Compl. ¶¶ 88–92. Collegium argues that Walgreens fails to plead facts indicating it conferred a "direct" benefit upon Collegium. Mem. at 25–26.

"Unjust enrichment is defined as retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 82 (1st Cir. 2020) (internal quotation marks omitted) (applying Massachusetts law). To state a claim for unjust enrichment, Walgreens must allege "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable." *Stevens v. Thacker*, 550 F. Supp. 2d 161, 165 (D. Mass. 2008). The third element, inequitable acceptance or retention, requires allegations of "some

injustice." *Id.* Massachusetts courts "emphasize the primacy of equitable concerns in a finding of unjust enrichment." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009). "Unjustness is 'a quality that turns on the reasonable expectations of the parties.'" *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 150 (D. Mass. 2021) (quoting *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013)). A contractual relationship between the parties is not required for—and in fact forecloses—recovery under unjust enrichment. *Greenwald v. Chase Manhattan Mortg. Corp.*, 241 F.3d. 76, 78 n.1 (1st Cir. 2001); *see also Philibotte v. Niscource Corp. Servs. Co.*, 793 F.3d 159, 167 (1st Cir. 2015) ("A claim for unjust enrichment generally cannot stand where there is an existing, express contract, unless the contract is not valid.").

Here, Walgreens has pled facts sufficient to state a claim for unjust enrichment. Walgreens alleges that it conferred more than $14 million in payments for products "that expired or became unsaleable and that should have been returnable and subject to credit." Compl. ¶ 91. In defense, Collegium argues that, because Walgreens did not *directly* confer the benefit, but did so indirectly by paying its distributor, it does not meet the first element.[4] Mem. at 25–26. However, "[u]njust enrichment does not require that a defendant receive direct payments from a plaintiff." *Massachusetts v. Mylan Lab'ys*, 357 F. Supp. 2d 314, 323 (D. Mass. 2005) (citing *Greenwald*, 241 F.3d at 81); *see also Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139, 152 (D. Mass. 2025) ("[T]he relevant question is whether [the defendant] received a benefit from the plaintiffs at all,

[4] In its opposition, Walgreens also argues that it *did* confer a direct benefit upon Collegium: the profit Collegium retained for "not hav[ing] to refund the value of Walgreens'[s] returns." Dkt. 27 at 19.

not whether that benefit was directly received." (citing *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 589 (2024))).[5]

As for the second element, there is no dispute that Collegium was aware of Walgreens's purchases. Through frequent communications, Collegium knew Walgreens intended to return the products pursuant to the Return Policy. *See e.g.*, Compl. ¶¶ 36–37, 47, 59.

Finally, with respect to the third element, Walgreens alleges that Collegium's retention of $14 million from Walgreens's purchased medications that were unreturnable is unjust. According to Walgreens, Collegium, by and through its agent, delayed issuing Form 222s, which prevented Walgreens from returning the products within the time frame specified by the Return Policy. *Id.* ¶ 90. By Walgreens's account, but for Collegium's actions, Walgreens would have received credit for the returned products. *Id.* ¶ 91. At the pleading stage, these allegations are sufficient to demonstrate a frustration of Walgreens's "reasonable expectations" of Collegium. *Metro. Life Ins.*, 464 Mass. at 644 (citation omitted). Accordingly, Walgreens has alleged facts that plausibly support a claim of unjust enrichment. Collegium's motion to dismiss as to Count IV is denied.

### D. <u>Count III: Violation of Mass. Gen. Laws ch. 93A</u>

Walgreens claims that Collegium "committed unfair and deceptive trade practices" by inducing Walgreens to purchase products, delaying the issuance of Form 222s and making "repeated false and deceptive promises to Walgreens to address and accept the returns at issue" in violation of Chapter 93A. Compl. ¶ 85; *see also* 82–84, 86–87. Collegium argues that Walgreens's allegations fail to rise to the level of an unfair or deceptive trade practice under

[5] Collegium cites just one case requiring allegations of "direct" benefits, *KPM Analytics North American Corp. v. Blue Sun Scientific., LLC*, 2021 WL 2982866 (D. Mass. Jul. 15, 2021), and that case is inapposite. The Court in *KPM* wrestled with the disclosure of trade secrets, a unique type of "benefit." *Id.* at *16 ("No cause of action lies where a plaintiff discloses the trade secret to a third party, who then disclosed the trade secret to defendant."). Here, the benefit is purely monetary.

Chapter 93A and, additionally, that Massachusetts is not the "center of gravity" of the alleged misconduct. Mem. at 20–25.

Under Chapter 93A, an unfair or deceptive practice is "best discerned from the circumstances." *Cynosure, LLC v. Reveal Lasers LLC*, 793 F. Supp. 3d 315, 347 (D. Mass. 2025) (quoting *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 17 (1st Cir. 2021)). Unfair practices and deceptive practices are distinct under Massachusetts law. *See Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39–44 (1st Cir. 2024) (analyzing alleged unfair practices and deceptive practices separately). To determine if a practice is unfair, the Court considers "whether the conduct: (1) 'is within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; (2) 'is immoral, unethical, oppressive, or unscrupulous'; and (3) 'causes substantial injury to consumers or other businesses.'" *Id.* at 39 (quoting *Columbia Plaza Assocs.*, 493 Mass. at 587). To determine if a practice is deceptive, the Court must consider "'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Walsh v. TelTech Sys., Inc.*, 821 F.3d 155, 160 (1st Cir. 2016) (alteration in original) (quoting *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004)). As already addressed, this Court has determined that Walgreens has plausibly pled some common-law concept of unfairness through its unjust enrichment claim. *See supra* Section III.C.

In particular, the Court concludes that Collegium's action—or inaction—as it relates to the Form 222s is Walgreens's most compelling allegation of a deceptive or unfair business practice. Collegium, by and through ICS, was responsible for issuing Form 222s. *See* Compl. ¶ 39 ("[N]o return can be made until Collegium, or ICS on Collegium's behalf, provides a signed Form 222."). However, "by either failing to issue or delaying the issuance of Form 222s," Collegium made it

difficult or impossible for Walgreens to return products within the time frame outlined in the Return Policy. *Id.* ¶ 48. Taken in the light most favorable to Walgreens, the "complaint's allegations of repeated delay, evasion, and misrepresentation" in the issuance of Form 222s "sufficiently allege an unfair or deceptive business practice for purposes of Chapter 93A." *Hanrahran v. Specialized Loan Servicing, LLC*, 54 F. Supp. 3d 149, 156 (D. Mass. 2014).

Collegium also disputes that Massachusetts was the "center of gravity" of Collegium's actions. Mem. at 21–22. In raising a "center of gravity" defense, the defendant, "bears the burden of proving that the 'center of gravity of the circumstances that give rise to the claim' resides outside the Commonwealth." *Heraeus Kulzer LLC v. Omni Dental Supply*, 2013 WL 3305284, at *7 (D. Mass. Jul. 1, 2013) (quoting *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 438 Mass. 459, 473 (2003)). Collegium is correct that the Court *may* dismiss a Chapter 93A claim at the pleading stage for failure to adequately allege a center of gravity. Dkt. 28 at 11 (citing *C.E.B. Inc. v. HCL Am. Inc.*, 2026 WL 1256210, at *8 (D. Mass. May 7, 2026)).[6] However, if the centrality of the Commonwealth is genuinely in dispute, a motion to dismiss is usually not "an appropriate vehicle" to challenge a Chapter 93A claim. *Guest-Tek Interactive Ent. Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010) (quoting *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003)).

Here, Collegium has its principal place of business in Massachusetts. Compl. ¶ 3. It is a logical and reasonable inference that alleged decisions to delay the Form 222 return authorizations may have occurred at Collegium's Massachusetts headquarters. Additionally, as Walgreens notes, the funds at issue are retained at Collegium's Massachusetts offices. *Id.* ¶ 83; *see also* Dkt. 27 at

[6] Notably, in this Court's decision in *C.E.B.*, the only alleged Massachusetts connection was a single phone call received in the state. 2026 WL 1256210, at *8.

23. At the pleading stage, those connections to Massachusetts are sufficient to raise a factual dispute as to the center of gravity of Walgreens's claim. Collegium's citations to cases with full records only reinforce the conclusion that additional fact development is necessary.[7] At summary judgment, Collegium, equipped with completed discovery, will "bear[] the burden of proving that the 'center of gravity of the circumstances that give rise to the claim' resides outside the Commonwealth." *Heraeus Kulzer*, 2013 WL 3305284, at *7 (quoting *Kuwaiti Danish Comput.*, 438 Mass. at 470). At this stage however, in light of Walgreens's plausible pleadings, Collegium's motion to dismiss Count III is denied.

### E. **Statute of Limitations**

Finally, Collegium argues that the applicable statute of limitations bars Walgreens's claims. Mem. at 14–16. The parties agree that a four-year statute of limitations applies to all claims.[8] *See* Mem. at 14; Dkt. 27 at 24–25. Given that Walgreens first filed its complaint in the

---

[7] *See* Mem. at 20–22 (first citing *Cynosure*, 793 F. Supp. 3d 315 (entering final judgment); then citing *Arthur D. Little Int'l v. Dooyang Corp.*, 928 F. Supp. 1189 (D. Mass. 1996) (granting summary judgment)).

[8] The statute of limitations for Chapter 93A claims is four years. Mass. Gen. Laws ch. 260, § 5A. As for the unjust enrichment claim, there are a number of possibilities. "Unjust enrichment, a claim sounding in equity, can be subject to a three-year statute of limitations if the claim arises from a tort, or a six-year statute of limitations if the claim arises from a contractual dispute." *Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.*, 458 F. Supp. 3d 95, 106 (D. Mass. 2020). What is more, if the unjust enrichment claim implicates a sale of goods contract, the statute of limitations is four years. *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 270 n.1 (D. Mass. 2017) (citing Mass. Gen. Laws ch. 106, § 2-725). "The court must look to the 'gist of the action' or the essential nature of the plaintiff's claim in determining what statute of limitations to apply." *Palandjian v. Pahlavi*, 614 F. Supp. 1569, 1577 (D. Mass. 1985). Here, though the breach of contract claim does not survive, the "gist of the action" still turns on a contract for the sale of goods. For that reason, the Court will employ a four-year statute of limitations.

Northern District of Illinois on June 12, 2025, the statute of limitations seemingly does not apply to any claims arising after June 2021.[9]

Generally, whether the statute of limitations applies is a question of fact, not ripe for adjudication at the motion to dismiss stage. *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) ("[I]t . . . is well settled that, for dismissal to be allowed on the basis of an affirmative defense, the acts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" (quoting *Aldahonda–Rivera v. Parke Davis & Co.*, 882 F.2d 590, 592 (1st Cir. 1989))). It is not clear from the face of the Complaint precisely *when* the alleged unjust enrichment occurred. Collegium argues that the Complaint is clear the alleged scheme began in January 2020, outside the statute of limitations period. Mem. at 15. However, the first of the alleged false and deceptive statements occurred much later than January 2020. *See e.g.*, Compl. ¶ 61 (alleging false and deceptive statements "throughout 2022").

At this stage in the litigation, the Court lacks a fully developed factual record to determine the scope of the alleged scheme or precisely when the alleged unjust enrichment or unfair and deceptive acts occurred. Where, as here, key "factual questions remain unresolved, a statute of limitations defense cannot succeed at th[e] pleading stage." *Dias de Souza v. Am. Used Auto Parts, Inc.*, 2026 WL 788267, at *11 (D. Mass. Mar. 20, 2026). Collegium "may renew [its] arguments for [its] affirmative defense later in this litigation." *Id.*

[9] Under Massachusetts law, the statute of limitations is tolled based upon Walgreens's first filing in the Northern District of Illinois on June 12, 2025. *See Rodi v. S. New Eng. Sch. of L.*, 389 F.3d 5, 18 (1st Cir. 2004) ("[U]nder Massachusetts law, if an action is duly commenced within the limitations period and then dismissed for 'any matter of form,' the plaintiff is entitled to 'commence a new action for the same cause within one year after the dismissal.'" (quoting Mass. Gen. Laws ch. 260, § 32)). Walgreens's case was dismissed in the Northern District of Illinois for want of personal jurisdiction, which Massachusetts courts view as a dismissal "arising out of matters of form." *Id.*

## IV. **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Counts I and II are dismissed.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: August 19, 2026