**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WALGREEN CO.,<br><br>Plaintiff,<br><br>v.<br><br>COLLEGIUM PHARMACEUTICAL, INC.,<br><br>Defendant/Third-Party Plaintiff,<br><br>v.<br><br>INMAR RX SOLUTIONS, INC.,<br><br>Third-Party Defendant. | Civil Action No. 1:26-cv-11242-BEM |

**MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT INMAR RX SOLUTIONS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................ 2

A. The Parties and Underlying Action ........................................................ 2

B. Collegium's Allegations ........................................................................ 2

C. The Inmar-Walgreens Services Agreement ............................................ 3

D. Inmar Rx's Lack of Massachusetts Contacts .......................................... 4

III. ARGUMENT ............................................................................................ 5

A. The Court Lacks Personal Jurisdiction Over Inmar Rx. ........................... 5

1. Legal Standard for Dismissal Under Rule 12(b)(2). ................................ 5

2. Inmar Rx Is Not Subject to Personal Jurisdiction in Massachusetts. ........ 6

a. Jurisdiction Over Inmar Rx is Improper Under the Massachusetts Long-Arm Statute. . 7

b. Inmar Rx is Not Subject to General Jurisdiction in Massachusetts. ......... 8

c. Inmar Rx is Not Subject to Specific Personal Jurisdiction in Massachusetts. ......... 8

B. Collegium Fails to State Claims for Breach of Contract, Tortious Interference with Contract, Indemnity, and Contribution Against Inmar Rx. ......... 15

1. Collegium Was Not a Third-Party Beneficiary Under the Inmar-Walgreens Contract, and Thus its Breach of Contract Claim Necessarily Fails. ......... 16

2. Collegium's Tortious Interference Claim is Time-Barred and Fails to Allege Knowledge and Improper Motive or Means. ......... 17

3. Collegium Fails to Allege the Existence of a Contractual or Common Law Indemnification Right or Any Basis for Joint Tort Liability. ......... 19

IV. CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
812 F.3d 54 (1st Cir. 2016)....11

*Adelson v. Hananel*,
510 F.3d 43 (1st Cir. 2007)....6, 13

*Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,
267 F.3d 30 (1st Cir. 2001)....4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....15

*Azumi LLC v. Lott & Fischer, PL*,
621 F. Supp. 3d 219 (D. Mass. 2022)....7

*B.C. Constr. Co. v. Johnson Roberts Assocs., Inc.*,
106 Mass. App. Ct. 107 (2025)....19

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
825 F.3d 28 (1st Cir. 2016)....5, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....15

*Blackstone Realty LLC v. FDIC*,
244 F.3d 193 (1st Cir. 2001)....17

*Bluetarp Fin., Inc. v. Matrix Constr. Co.*,
709 F.3d 72 (1st Cir. 2013)....14

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017)....8

*Boit v. Gar-Tec Prods., Inc.*,
967 F.2d 671 (1st Cir. 1992)....5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....13

*Butler v. Balolia*,
736 F.3d 609 (1st Cir. 2013)....12

*Carreras v. PMG Collins, LLC*,
660 F.3d 549 (1st Cir. 2011)....11

*Catrone v. Ogden Suffolk Downs, Inc.*,
647 F. Supp. 850 (D. Mass. 1986) .......... 7

*Copia Commc'ns, LLC v. AMResorts, L.P.*,
812 F.3d 1 (1st Cir. 2016) .......... 5

*Crowe v. Harvey Klinger, Inc.*,
277 F. Supp. 3d 182 (D. Mass. 2017) .......... 10, 13, 15

*Cutting Edge Homes, Inc. v. Mayer*,
103 Mass. App. Ct. 749 (2024) .......... 18, 19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 8

*Donatelli v. Nat'l Hockey League*,
893 F.2d 459 (1st Cir. 1990) .......... 14

*Elias v. Unisys Corp.*,
410 Mass. 479 (1991) .......... 19, 20

*Est. of Smith v. Raytheon Co.*,
573 F. Supp. 3d 487 (D. Mass. 2021) .......... 4

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
No. 21-11269-FDS, 2024 WL 3696388 (D. Mass. Aug. 7, 2024), *cert. granted*, 145 S. Ct. 116 (2024), *and rev'd and remanded*, 605 U.S. 280 (2025) .......... 10

*Euro-Pro Operating LLC v. Scutte*,
No. Civ.A. 05-11946-DPW, 2006 WL 239802 (D. Mass. Jan. 31, 2006) .......... 11

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*,
4 F.3d 90 (1st Cir. 1993) .......... 16

*Falls v. Silver Cross Hosp. & Med. Ctrs.*,
2016 IL App (3d) 150319 .......... 16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 9, 10

*G.S. Enters., Inc. v. Falmouth Marine, Inc.*,
410 Mass. 262 (1991) .......... 18

*Gargano v. Cayman Nat'l. Corp.*,
No. 09-11938-JLT, 2010 WL 2245034 (D. Mass. June 2, 2010) .......... 12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 6, 8

*Harlow v. Children's Hosp.*,
432 F.3d 50 (1st Cir. 2005) .......... 9

*Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) .......... 6

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941) .......... 16

*Kowalski v. Gagne*,
914 F.2d 299 (1st Cir. 1990) .......... 12

*LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*,
193 F. Supp. 2d 296 (D. Mass. 2002) .......... 9, 14

*Martis v. Grinnell Mut. Reinsurance Co.*,
388 Ill. App. 3d 1017 (2009) .......... 16, 17

*Nowak v. Tak How Inv. Ltd.*,
899 F. Supp. 25 (D. Mass. 1995) .......... 15

*Oxford Glob. Res., LLC v. Hernandez*,
480 Mass. 462 (2018) .......... 16

*Phillips v. Prairie Eye Ctr.*,
530 F.3d 22 (1st Cir. 2008) .......... 6, 12

*Pritzker v. Yari*,
42 F.3d 53 (1st Cir. 1994) .......... 13, 14

*Psy-Ed Corp. v. Klein*,
459 Mass. 697 (2011) .......... 18

*Reagent Fund II, LP v. Lotus Gunworks of S. Fla., LLC*,
687 F. Supp. 3d 169 (D. Mass. 2023) .......... 12

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995) .......... 9, 14

*SCVNGR, Inc. v. Punchh, Inc.*,
478 Mass. 324 (2017) .......... 5, 6, 8

*Stark v. Advanced Magnetics, Inc.*,
50 Mass. App. Ct. 226 (2000) .......... 17

*Ticketmaster-N.Y., Inc. v. Alioto*,
26 F.3d 201 (1st Cir. 1994) .......... 14

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
524 F.3d 315 (1st Cir. 2008) .......... 17

*Trs. of Bos. Univ. v. Clough, Harbour & Assocs. LLP*,
495 Mass. 682 (2025) ....................19

*U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*,
894 F.2d 9 (1st Cir. 1990) ....................7

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992) ....................13

*Vapotherm, Inc. v. Santiago*,
38 F.4th 252 (1st Cir. 2022) ....................9, 12

*Walden v. Fiore*,
571 U.S. 277 (2014) ....................11

*Walgreen Co. v. Collegium Pharm., Inc.*,
No. 1:25-cv-06560 (N.D. Ill. Aug. 12, 2025), ECF No. 9 ....................12

*Ward v. AlphaCore Pharma, LLC*,
89 F.4th 203 (1st Cir. 2023) ....................5

*Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*,
394 F. Supp. 2d 299 (D. Mass. 2005) ....................13, 15

*Yiakas v. Savoy*,
26 Mass. App. Ct. 310 (1988) ....................18, 19

**Statutes**

Mass. Gen. Laws
ch. 223A, § 3 (2005) ....................6, 7
ch. 231B, § 1 ....................20
ch. 231B, § 1(b) ....................20
ch. 260, § 2A ....................17

**Rules and Regulations**

D. Mass. L.R. 7.1 ....................1

Fed. R. Civ. P.
12(b)(2) ....................1, 5
12(b)(6) ....................1, 15, 17

**Other Authorities**

U.S. Const. amend. XIV, § 1 ....................5, 6

Third-Party Defendant Inmar Rx Solutions, Inc. ("Inmar Rx"), through undersigned counsel, respectfully submits this Memorandum in support of its Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and the United States District Court for the District of Massachusetts Local Rule 7.1.

## I. INTRODUCTION

The Third-Party Complaint brought by Defendant Collegium Pharmaceutical, Inc. ("Collegium") should be dismissed on two independent grounds.

First, this Court lacks personal jurisdiction over Inmar Rx, which is incorporated in Texas with its principal place of business in Winston-Salem, North Carolina. It owns no property, leases no offices, and maintains no registered agent in Massachusetts. Moreover, the conduct alleged in the Third-Party Complaint—such as processing returns, issuing debit memos, and shipping products—occurred at Inmar Rx's facility in Texas, while shipments were sent to Collegium's returns processor, Integrated Commercialization Solutions, LLC ("ICS"), which is not alleged to be located in Massachusetts. Inmar Rx's only relevant contacts with Massachusetts are correspondence with Collegium, which is insufficient to establish personal jurisdiction over Inmar Rx in Massachusetts.

Second, even if the Court had personal jurisdiction, the Third-Party Complaint fails to state claims for breach of contract, tortious interference, indemnification, or contribution against Inmar Rx. Count I, alleging breach of contract, fails to plausibly allege that the Services Agreement between Inmar Rx and Walgreen Co. ("Walgreens") was intended to benefit Collegium. Nor can it, as the Services Agreement contains an express "No Third-Party Beneficiaries" clause that forecloses the claim altogether. Count II, alleging tortious interference with a contract, is time-

barred by the three-year statute of limitations, and, in any event, fails to allege that Inmar Rx intentionally or knowingly interfered through improper motive or means. The remaining counts,[1] for indemnification and contribution, fail to allege the existence of the necessary contractual or common law relationship between Inmar Rx and Collegium.

For these reasons, the Court should dismiss Collegium's claims for lack of personal jurisdiction, or, if the Court should find that it has personal jurisdiction, it should dismiss the Third-Party Complaint in its entirety for failure to state a claim.

## II. FACTUAL BACKGROUND

### A. The Parties and Underlying Action

This case arises from a dispute over the handling of pharmaceutical product returns. Walgreens filed the underlying action against Collegium on March 12, 2026. ECF No. 38, ¶ 9. It alleged that Collegium prevented Walgreens from returning certain drugs within the timeframe required by the DEA to receive return credit under Collegium's Returns Policy. *Id.* at ¶ 12.

Collegium is a Virginia corporation with its principal place of business in Stoughton, Massachusetts. *Id.* at ¶ 5. Inmar Rx is a corporation organized under the laws of the State of Texas, with its principal place of business in Winston-Salem, North Carolina. *Id.* at ¶ 6. Walgreens contracts with Inmar Rx to provide reverse distribution services. *Id.*

Walgreens is alleged to be an Illinois corporation with its principal place of business located in Deerfield, Illinois. ECF No. 1, ¶ 2.

### B. Collegium's Allegations

Collegium marketed two drugs, Xtampza and Nucynta, directly to Walgreens. ECF No. 1, ¶ 1. Pursuant to Collegium's Returns Policy, Walgreens was to return expired products to

[1] Both the indemnification claim and the contribution claim are labeled "Count III." ECF No. 38, at 22–23. It is apparent from context, though, that they are separate counts.

Collegium. *Id.* The process of returning and issuing refunds or credits for medications that have expired or are expiring is known as "reverse distribution." *Id.* at ¶ 8. Accordingly, the pharmaceutical industry utilizes reverse distribution companies like Inmar Rx to process the return of unused or expired products, like Xtampza and Nucynta. ECF No. 38, ¶¶ 15–16. Collegium alleges that the returns process at issue here was supposed to operate as follows:

> (a) Walgreens would gather expired or near-expired products at its pharmacy locations; (b) Walgreens would send those products to Inmar for processing; (c) Inmar would prepare the products for return and notify ICS when the shipment was ready by submitting debit memos to ICS; (d) ICS would then issue a Form 222 and return goods authorization ("RGA") paperwork to Inmar; (e) Inmar would use those forms to ship the products to ICS for credit processing within the 60-day window allowed under federal law; and (f) Collegium would issue any credit due for eligible product to Cencora, the wholesaler from whom Walgreens purchased the Products.

*Id.* at ¶ 22.

Collegium alleges that Inmar Rx's operations were centralized at its Grand Prairie, Texas facility, where it processed returned products for Walgreens and other customers. *Id.* at ¶ 30. It alleges that several operational issues arose at that facility, including sending automated debit memo emails before products were ready to ship, *Id.* at ¶¶ 13, 23, 38–39; accumulating a large backlog of unprocessed returns, *Id.* at ¶¶ 30–33; allowing DEA Forms 222 to expire, *Id.* at ¶¶ 32, 37; and ultimately Inmar Rx destroying products without authorization. *Id.* at ¶¶ 42, 52–53. Throughout this process, Collegium alleges that communications occurred primarily between Inmar Rx and ICS—not Collegium. *Id.* at ¶¶ 34–36, 39–40, 46–50. ICS is not alleged to be located in Massachusetts. Collegium conducted an in-person inspection of the products at Inmar Rx's Texas facility on February 2, 2022. *Id.* at ¶ 44.

### C. The Inmar-Walgreens Services Agreement

Inmar Rx provides Walgreens with reverse distribution services based on a written services agreement. The contract at issue is alleged as the "Inmar-Walgreens Contract"—a Services

Agreement between Inmar Rx and Walgreens, not Collegium. *Id.* at ¶¶ 24–27. The Services Agreement specifies that the only parties to the contract are Walgreens and Inmar Rx, Ex. A ("Parham Decl."), at Ex. 1[2] (relevant excerpts only) at 1; the agreement is governed by Illinois law, *id.* at ¶ 11.9; and there are no third-party beneficiaries, specifically providing as follows:

> Except with regard to an Affiliate[3] of Walgreen, this Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns (except as otherwise expressly provided herein) and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

*Id.* at ¶ 11.12.

**D. Inmar Rx's Lack of Massachusetts Contacts**

As set forth in the Declaration of Randy Parham, Senior Manager of Warehouse Operations at Inmar Rx's Grand Prairie, Texas location (the "Parham Declaration"), Inmar Rx has virtually no contacts with the Commonwealth of Massachusetts, and the contacts that it maintained with Massachusetts related to this dispute were minimal and sporadic.

Inmar Rx is not registered to conduct business in Massachusetts. Parharm Decl. ¶ 4. Inmar Rx does not maintain any inventory, equipment, or other tangible property in Massachusetts. *Id.* ¶ 5. Inmar Rx does not maintain, lease, own, or occupy any property or offices in Massachusetts. *Id.* ¶ 6. Inmar Rx employs only six individuals—out of a total US workforce of approximately 1,295—

---

[2] Inmar Rx has filed relevant portions of the Services Agreement between Walgreens and Inmar Rx, dated as of July 17, 2020, as Exhibit 1 to the Parham Declaration, which is attached hereto as Exhibit A. The Court can consider the Services Agreement without converting this into a motion for summary judgment because Collegium "sufficiently referred to [the Inmar-Walgreens Contract] in the complaint," as it forms the basis for Collegium's breach of contract claim against Inmar Rx. *Est. of Smith v. Raytheon Co.*, 573 F. Supp. 3d 487, 498 (D. Mass. 2021) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); *see* ECF No. 38 ¶¶ 24, 25, 27, 65.

[3] "Affiliate" is defined in the Services Agreement as "any other person or entity which directly or indirectly controls, is controlled by or is under common control with either Party. For purposes of this definition, 'control' means direct or indirect ownership of greater than 50% of the equity having the power to vote on or direct the affairs of the entity." Parham Decl., at Ex. 1 at 5.

who work in Massachusetts, and all six work remotely rather than in any Inmar Rx owned facility. *Id.* ¶ 7. Three of these individuals work in sales, two are on the engineering team, and one is in customer success. *Id.* These six individuals had no involvement in the conduct or actions giving rise to this litigation or the allegations in the Third-Party Complaint. *Id.* Inmar Rx has hospital system customers located in, or who maintain an address in, Massachusetts, but these entities had no involvement in the conduct or actions giving rise to this litigation or the allegations in the Third-Party Complaint. *Id.* ¶ 8.

## III. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Inmar Rx.

#### 1. Legal Standard for Dismissal Under Rule 12(b)(2).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016); *Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 208 (1st Cir. 2023). In carrying this burden, "plaintiffs may not rely on unsupported allegations in their pleadings to make a *prima facie* showing of personal jurisdiction." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). Rather, the plaintiff must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Id.*

A federal court sitting in diversity—or, as here, exercising supplemental jurisdiction—may exercise personal jurisdiction over a non-resident defendant only to the extent permitted by the forum state's long-arm statute *and* the Due Process Clause of the Fourteenth Amendment. *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 3–4 (1st Cir. 2016); *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325 (2017). The Massachusetts long-arm statute provides in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]

Mass. Gen. Laws ch. 223A, § 3 (2005). Massachusetts courts are clear that the long-arm statute must be analyzed as a threshold matter. *SCVNGR*, 478 Mass. at 325.

Under the Due Process Clause, there are two ways in which a defendant may be subjected to the personal jurisdiction of a court: "general jurisdiction" and "specific jurisdiction." For general jurisdiction, the defendant must maintain contacts that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)).

For specific personal jurisdiction, courts are guided by three considerations: relatedness, purposeful availment, and reasonableness. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26–27 (1st Cir. 2008). Relatedness "refers to the requirement that the underlying claim 'arise out of' or be 'related to' the activities within the forum state." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007). "Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Phillips*, 530 F.3d at 26–27. Third, the exercise of jurisdiction must be reasonable and fair.

2. <u>Inmar Rx Is Not Subject to Personal Jurisdiction in Massachusetts.</u>

Inmar Rx respectfully asks the Court to dismiss this action because Collegium cannot satisfy the long-arm statute or carry its burden to "establish sufficient facts to support a prima facie

case authorizing personal jurisdiction." *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990).

**a. Jurisdiction Over Inmar Rx is Improper Under the Massachusetts Long-Arm Statute.**

Collegium has not shown that the Massachusetts long-arm statute authorizes exercising personal jurisdiction over Inmar Rx. *See* Mass. Gen. Laws ch. 223A, § 3. Despite the specifically delineated grounds in the long-arm statute, *see supra* Section III.A.1, the Third-Party Complaint is devoid of *any* allegations that could authorize the exercise of jurisdiction over Inmar Rx under the long-arm statute. Inmar Rx does not transact or regularly engage in business or conduct in Massachusetts; it does not contract to supply services or things in Massachusetts; and it has not caused tortious injury by an act or omission in Massachusetts. *See generally* Parham Decl.; *see infra* Section III.A.2.c.i. "The long arm statute confers jurisdiction over the person to the constitutional limit *only* when some basis for jurisdiction enumerated in the statute has been established." *Catrone v. Ogden Suffolk Downs, Inc.*, 647 F. Supp. 850, 858 (D. Mass. 1986) (emphasis added). Collegium "has presented no evidence that [its] complained of injury 'arises from'" any purported contact that Inmar Rx had with Massachusetts. *Id.*; *see infra* Section III.A.2.c.i. Thus, the exercise of jurisdiction over Inmar Rx under the long-arm statute fails.

This should end the Court's inquiry, and the Third-Party Complaint should be dismissed because "[o]nly if the statutory requirements are satisfied should the court consider whether its exercise of jurisdiction is permitted by the Constitution." *Azumi LLC v. Lott & Fischer, PL*, 621 F. Supp. 3d 219, 223 (D. Mass. 2022) (citing *SCVNGR*, 478 Mass. at 329 (noting that a court is required to decline to exercise jurisdiction if at least one statutory prerequisite is not met)).

**b. Inmar Rx is Not Subject to General Jurisdiction in Massachusetts.**

Even if the long-arm statute were satisfied, the Court does not have general jurisdiction over Inmar Rx. General jurisdiction requires that a defendant's contacts with the forum state be "so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (alteration in original) quoting *Goodyear*, 564 U.S. at 919). The "paradigm" forums for general jurisdiction of a corporation are the state of incorporation and the principal place of business. *Id.* at 137. Only in an "exceptional case" will general jurisdiction exist elsewhere. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted).

Inmar Rx is incorporated in Texas and has its principal place of business in North Carolina. ECF No. 38, ¶ 6. Inmar Rx is not "at home" in Massachusetts by any measure, and Collegium has not alleged any facts to the contrary. That approximately six remote associates work in Massachusetts (none of whom had any involvement with the matters at issue), Parham Decl. ¶ 7, and that Inmar Rx has unrelated customers who are Massachusetts companies or have addresses in Massachusetts, *id.* ¶ 8, fall far short of the "constant and pervasive" contacts required for general jurisdiction. *See generally Daimler*, 571 U.S. at 138–39 (rejecting general jurisdiction in any state, even where presence is "sizable," as such a view would be "grasping"). The Court plainly lacks general jurisdiction over Inmar Rx.

**c. Inmar Rx is Not Subject to Specific Personal Jurisdiction in Massachusetts.**

Similarly, even if the long-arm statute were satisfied, Inmar Rx is not subject to specific personal jurisdiction in Massachusetts based on the relevant, three-pronged test.

i. <u>Relatedness – The Claims Do Not Arise From or Relate to Inmar Rx's Contacts with Massachusetts.</u>

"In analyzing relatedness, the court considers the nexus between the claim and the defendant's in-forum activities." *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d

296, 303 (D. Mass. 2002). The defendant's contacts with the forum state must be the basis for the suit, not merely tangentially related. *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005). "The relatedness requirement is not an open door; it is closely read, and it requires a showing of a *material* connection [to the forum state]." *Id.* (emphasis added). It "is met only if 'the action . . . directly arise[s] out of the specific contacts between the defendant and the forum state.'" *LaVallee*, 193 F. Supp. 2d at 303 (alterations in original) quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). Notably, "'a strict causal relationship between the defendant's in-state activity and the litigation' is not necessary" to find relatedness, but there are still "real limits" in order for a claim to "relate to" contacts with the forum state. *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022) (noting that "some relationships will support jurisdiction without a causal showing." (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)).

At the outset of its Third-Party Complaint, Collegium alleges the basis for its claims against Inmar Rx: "This Third-Party Complaint arises from Inmar's well-documented, systemic failures in processing controlled substance returns on behalf of Walgreen Co." ECF No. 38, ¶ 1. However, Inmar Rx's processing of controlled substances occurred *only* at its facility in Texas. *See id.* ¶ 30 (Inmar Rx "consolidat[ed] reverse distribution operations at its Grand Prairie, Texas facility" and ran product "through [that] single facility"); ¶¶ 43–44 (Collegium conducted an in-person inspection at Inmar Rx's Texas facility to "account for and report as necessary the quantities of Products actually in Inmar's possession"); ¶ 60 (Inmar Rx's employee "admitted that Inmar had failed to account for certain products and described Inmar's unsuccessful attempts to track them down in their own facility," with that facility being in Texas). As such, the allegations in the Third-Party Complaint arise from Inmar Rx's processing of returns, which, as Collegium alleges, occurred only at Inmar Rx's facility in Texas.

Nor is there a sufficient "connection" between the Third-Party Complaint and Inmar Rx's few in-state activities. *See Ford*, 592 U.S. at 369. Inmar Rx is not incorporated in Massachusetts, its principal place of business is not in Massachusetts, and it has no physical presence there. ECF No. 38, ¶ 6; Parham Decl. ¶¶ 5–6. There are six Inmar Rx employees that work remotely in Massachusetts—three of these individuals work in sales, two are on the engineering team, and one is in customer success. *Id.* ¶ 7. These six individuals had no involvement in the conduct or actions alleged in the Third-Party Complaint. *Id.* And while Inmar Rx has hospital-system customers located in, or maintaining an address in, Massachusetts, these customers likewise had no involvement in the conduct or actions alleged in the Third-Party Complaint. *Id.* ¶ 8. The relatedness prong thus fails. *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 21-11269-FDS, 2024 WL 3696388, at *7 (D. Mass. Aug. 7, 2024) (finding no "connection" for purposes of relatedness where defendants were not incorporated in Massachusetts, none had their principal place of business there, there was no evidence of defendants having physical presence in Massachusetts, and no injury was alleged to have occurred in Massachusetts), *cert. granted*, 145 S. Ct. 116 (2024), *and rev'd and remanded on other grounds*, 605 U.S. 280 (2025).

ii. <u>Purposeful Availment – Inmar Rx's Correspondence With Collegium Alone is Insufficient for Personal Jurisdiction.</u>

The second prong is purposeful availment, which "occurs 'when a defendant deliberately targets its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior.'" *Crowe v. Harvey Klinger, Inc.*, 277 F. Supp. 3d 182, 191 (D. Mass. 2017) (alteration in original) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)). "[T]he proper question [for purposeful availment] is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *A Corp. v. All*

*Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016) (citation omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). Here, the only alleged contact between Inmar Rx and Massachusetts is correspondence between Inmar Rx and Collegium. *See* ECF No. 38, ¶¶ 46, 47. Such correspondence, alone, has been consistently found insufficient to establish purposeful availment.

In *Euro-Pro Operating LLC v. Scutte*, plaintiff, a Massachusetts corporation, employed the defendants, residents of Florida with their principal places of business in Florida. No. Civ.A. 05-11946-DPW, 2006 WL 239802, at *2 (D. Mass. Jan. 31, 2006). After their relationship ended, defendants worked for a competitor headquartered in Massachusetts. *Id.* at *1. Plaintiff sued, alleging that the defendants obtained plaintiff's trade secrets through in-person meetings, phone calls, and correspondence with plaintiff's personnel in Massachusetts, then used those trade secrets to benefit the competitor. *Id.* at *2. Defendants moved to dismiss for lack of personal jurisdiction. *Id.* at *1. The court held that "an exercise of personal jurisdiction in this case would violate the Constitution." *Id.* at *5. Specifically, the court found that "emails provide no evidence of sufficient contact with Massachusetts," and the emails and meetings "do not . . . demonstrate more than isolated or fortuitous contact," which was insufficient for purposeful availment. *Id.* at *3–4.

So too here. Inmar Rx's correspondence with Collegium was sporadic at most, and thus insufficient to find that Inmar Rx purposefully availed itself of the privilege of doing business in Massachusetts. Indeed, Collegium only alleges that an Inmar Rx employee "sent a draft destruction agreement to Collegium on behalf of Inmar, and Collegium responded promptly with edits," ECF No. 38, ¶ 46, and Collegium sent "numerous follow-up emails" to the Inmar Rx employee, *id.* ¶ 47. There are no other allegations tying Inmar Rx to Collegium or any conduct in Massachusetts. Rather, Collegium alleges that Inmar Rx communicated mainly with ICS, an agent of Collegium,

which processed returns in Kentucky.[4] *Id.* ¶ 22 (Inmar Rx would notify ICS when the shipment was ready, ICS would issue a Form 222 to Inmar Rx, and Inmar Rx would ship the products to ICS); *id.* ¶ 33 (Inmar Rx returned product to ICS); *id.* ¶¶ 34–38 (detailing emails and phone calls between ICS and an Inmar Rx employee); *id.* ¶ 52 (Collegium, "through ICS," issued a destruction authorization); *see also* Parham Decl. ¶¶ 10, 14 (Inmar Rx ships Collegium's returned goods to ICS in Brooks, Kentucky). Inmar Rx employees never visited Massachusetts—even the "in-person inspection of the Products" occurred at Inmar Rx's facility in Texas. ECF No. 38, ¶ 43; Parham Decl. ¶ 13.

This correspondence between Inmar Rx and Collegium, a company that happens to have its principal place of business in Massachusetts, is wholly insufficient to show that Inmar Rx purposefully availed itself "of the privilege of conducting activities" in Massachusetts. *Phillips*, 530 F.3d at 27; *see also Vapotherm*, 38 F.4th at 261 (noting that injury to a forum resident is an insufficient connection to the forum state to establish personal jurisdiction). Indeed, Inmar Rx's emails to Collegium "could have been read from any computer anywhere in the world, but which the Plaintiff just happened to read in Massachusetts," a fact that courts do not reasonably construe as an intentional action sufficient for purposeful availment. *Gargano v. Cayman Nat'l. Corp.*, No. 09-11938-JLT, 2010 WL 2245034, at *5 (D. Mass. June 2, 2010); *see also Reagent Fund II, LP v. Lotus Gunworks of S. Fla., LLC*, 687 F. Supp. 3d 169, 175 (D. Mass. 2023) (finding no personal

[4] The Third-Party Complaint does not allege any connection or contact between ICS and Massachusetts. Collegium has previously argued, based on Walgreens' initial complaint in the prior Illinois matter, that ICS is located in Brooks, Kentucky. *See Walgreen Co. v. Collegium Pharm., Inc.*, No. 1:25-cv-06560 (N.D. Ill. Aug. 12, 2025), ECF No. 9; *see also Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matter at hand."); *Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (holding that upon a motion to dismiss, courts may consider facts susceptible to judicial notice).

jurisdiction even when there were alleged to be "over a hundred emails, dozens of phone calls, and multiple proposals" exchanged with the Massachusetts-based plaintiff).

Thus, this prong fails, as Inmar Rx did not "deliberately target[] its behavior toward" Massachusetts so as to authorize the exercise of personal jurisdiction over Inmar Rx in Massachusetts. *Crowe*, 277 F. Supp. 3d at 191.

iii. Reasonableness – The Gestalt Factors Weigh In Favor of Declining to Exercise Personal Jurisdiction.

The last prong is the reasonableness of exercising personal jurisdiction over Inmar Rx in Massachusetts, which the Court need only reach "if the first two parts of the test for specific jurisdiction have been fulfilled." *Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*, 394 F. Supp. 2d 299, 307 (D. Mass. 2005). The factors assessing reasonableness "play a larger role in cases where the minimum contacts question is very close," which is not the case here, as Inmar Rx's contacts with Massachusetts are clearly insufficient. *Adelson*, 510 F.3d at 51. The First Circuit has defined reasonableness according to the following "Gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Gestalt factors weigh against exercising jurisdiction here.

First, courts find that, with easy and accessible travel, the burden of traveling to another state "creates no especially ponderous burden for business travelers," and the court will only find a burden if it is "onerous in a special, unusual, or other constitutionally significant way." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) (finding that traveling between New York and Puerto Rico

for litigation was not burdensome); *see also LaVallee*, 193 F. Supp. 2d at 304 (although the court agreed the defendant would be inconvenienced litigating in Massachusetts, he had not asserted any special or unusual circumstance); *Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 83 (1st Cir. 2013) (since "mounting an out-of-state defense most always means added trouble and cost," a defendant must show some "particular or unique burden"). Inmar Rx submits that, though it would be inconvenient to litigate in Massachusetts without having any physical presence or employees there, it would not present an "especially ponderous burden." *Pritzker*, 42 F.3d at 64.

Second, Massachusetts would have little interest in adjudicating this dispute. The only fact tying this dispute to Massachusetts is Collegium's principal place of business, ECF No. 38, ¶ 5, as Collegium has not alleged that any harm occurred in Massachusetts. Courts are clear that, while "a forum state has a demonstrable interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders," this interest is "far less compelling" when the injury-causing act occurs outside the forum state. *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). In such circumstances, "apart from a generalized concern for the rights of its own domiciliaries, the [forum] state has no real interest in adjudicating the controversy." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 472 (1st Cir. 1990). Since "the Commonwealth's interest in the litigation *sub judice* is arguably lessened by the doubts surrounding whether defendant's act can be said to have been committed in the forum," this factor weighs in Inmar Rx's favor. *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 211 (1st Cir. 1994).

Third, though Collegium may have an interest in litigating in Massachusetts for its own convenience, its Third-Party Complaint effectively deflects any wrongdoing to Inmar Rx. Thus, it follows that Collegium would have a greater interest in seeking resolution in a court that has jurisdiction over Inmar Rx. *See Nowak v. Tak How Inv. Ltd.*, 899 F. Supp. 25 (D. Mass. 1995)

(noting that the plaintiff's interest weighed heavily in favor of litigating in a state where plaintiff had "the opportunity to obtain redress, if any be appropriate, for the grievous loss they have suffered.")

The fourth fifth factor—the judicial system's interest in obtaining the most effective resolution of the controversy—"is generally considered 'a wash.' 'Even though Massachusetts courts can effectively administer justice in this dispute, they have no corner on the market." *Crowe*, 277 F. Supp. 3d at 194 (quoting *Baskin-Robbins*, 825 F.3d at 41). As for the fifth factor, "this case does not involve any unique social or policy issues of concern" so as to favor Massachusetts. *Wolverine*, 394 F. Supp. 2d at 311. If anything, the only policies at issue here are federal ones applicable to controlled substances. Thus, these factors are neutral.

Therefore, if, and only if, the Court finds that the relatedness and purposeful availment prongs authorize jurisdiction such that the Court addresses reasonableness, the Court should conclude that it would be unreasonable to exercise personal jurisdiction over Inmar Rx in Massachusetts.

### B. Collegium Fails to State Claims for Breach of Contract, Tortious Interference with Contract, Indemnity, and Contribution Against Inmar Rx.

Even if the Court could exercise personal jurisdiction over Inmar Rx, Collegium's Third-Party Complaint must be dismissed under Rule 12(b)(6). "To survive a motion to dismiss [for failure to state a claim upon which relief may be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

1. <u>Collegium Was Not a Third-Party Beneficiary Under the Inmar-Walgreens Contract, and Thus its Breach of Contract Claim Necessarily Fails.</u>

Count I alleges that Inmar Rx breached its contract with Walgreens, under which Collegium was allegedly a third-party beneficiary. Inmar Rx provides reverse distribution services for Walgreens under a written Services Agreement. *See* Parham Decl., at Ex. 1. Collegium is not a party to that agreement, *id.* at 1, but it alleges that it was a third-party beneficiary of it. ECF No. 38, ¶ 68. Because Collegium was not a third-party beneficiary, its breach of contract claim must be dismissed.

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 n.5 (1st Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Massachusetts courts enforce contractual choice of law clauses unless the result would be contrary to public policy. *Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 468 (2018). Here, the Services Agreement provides that Illinois law controls. Parham Decl., at Ex. 1 ¶ 11.9.

Under Illinois law, Collegium was not a third-party beneficiary of the Services Agreement. "Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language." *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). The language of the Services Agreement is clear: it expressly disclaims the existence of third-party beneficiaries. Parham Decl., at Ex. 1 ¶ 11.12 ("this Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns (except as otherwise expressly provided herein) and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement"). This unambiguous language forecloses Collegium's alleged status as a third-party beneficiary. *See Falls v. Silver Cross Hosp. & Med.*

*Ctrs.*, 2016 IL App (3d) 150319, ¶ 44. Collegium was neither a party to the Services Agreement nor a third-party beneficiary of it, so it cannot assert a claim for any alleged breach of the Services Agreement. *Martis*, 388 Ill. App. 3d at 1020. Its breach of contract claim should be dismissed.

2. Collegium's Tortious Interference Claim is Time-Barred and Fails to Allege Knowledge and Improper Motive or Means.

Count II alleges that Inmar Rx interfered with Collegium's contract with Cencora, a drug wholesaler and distributor. ECF No. 38, ¶¶ 21, 78–80. That claim should be dismissed for at least two reasons. First, the applicable statute of limitations has passed.[5] And second, Collegium alleges no facts that suggest knowledge or improper motives on the part of Inmar Rx.

**a. The Statute of Limitations Bars the Tortious Interference Claim.**

Massachusetts applies a three-year statute of limitations to tortious interference with contract claims. MASS. GEN. LAWS ch. 260, § 2A; *Stark v. Advanced Magnetics, Inc.*, 50 Mass. App. Ct. 226, 232 (2000). Collegium filed its Third-Party Complaint against Inmar Rx on September 16, 2026. *See* ECF No. 38. Thus, the statute of limitations has expired as to any alleged tortious interference occurring before September 16, 2023, which covers all alleged conduct by Inmar Rx. Specifically, Collegium's Third-Party Complaint alleges that Inmar Rx's alleged difficulties began "as early as 2019" and had "intensified" "[b]y early 2020. *Id.* ¶¶ 2, 31. The allegations focus primarily on Inmar Rx's conduct at its Texas facility between 2020 and 2022. *Id.* ¶¶ 33–45. Collegium then alleges that it had correspondence with Inmar Rx from August 2022 through early 2023. *Id.* ¶¶ 46–51. Collegium then alleges that it issued a product destruction

[5] "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (alteration in original) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)).

authorization in March 2023 that Inmar Rx complied with in August 2023. *Id.* ¶¶ 51–53. As a result, Collegium last issued credits to Cencora for Inmar Rx's returned or destroyed products at issue on August 23, 2023. *Id.* ¶ 54. Because all of Inmar Rx's allegedly wrongful conduct occurred prior to September 16, 2023, Collegium's tortious interference claim is time-barred and should be dismissed.

**b. Collegium Fails to Allege Knowledge and Improper Motive or Means.**

Even if Collegium's tortious interference claim were not time-barred, it fails to allege sufficient facts to state a claim. "To prevail on a claim of tortious interference with a contract, a plaintiff must establish that '(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.'" *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 715–16 (2011) (quoting *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991)).

Collegium alleges no facts that would plausibly establish that Inmar Rx's actions were knowing or "improper in motive or means." *Id.* at 715 (citation omitted). To establish knowledge, a plaintiff must show that the defendant had knowledge of the contract and knew that its actions were interfering with the performance of the contract. *Yiakas v. Savoy*, 26 Mass. App. Ct. 310, 315 (1988). "To show an improper motive, what is required is a showing of an intent specifically to harm the plaintiff, unrelated to any legitimate business purpose." *Cutting Edge Homes, Inc. v. Mayer*, 103 Mass. App. Ct. 749, 755 (2024). And to show improper means, a showing that the defendant engaged in dishonesty, deceit, or intentional misrepresentation is required. *Id.* at 756.

Collegium fails to allege any of those essential elements. As to knowledge, its allegation that Inmar Rx "had knowledge of the contract between Collegium and Cencora," ECF No. 38, ¶

79, is wholly conclusory. There are no facts alleged sufficient to show that Inmar Rx knew the terms of Cencora's contract with Collegium or even to support a reasonable inference of knowledge. *See Yiakas*, 26 Mass. App. Ct. at 315. As to improper motive and means, *at most* Collegium attempts to allege negligence on the part of Inmar Rx. *See, e.g.*, ECF No. 38, ¶¶ 34, 38–39, 41–43. But courts are clear that mere negligence does not amount to improper motive or means sufficient to support an intentional interference claim. *See B.C. Constr. Co. v. Johnson Roberts Assocs., Inc.*, 106 Mass. App. Ct. 107, 113 (2025). Without more than allegedly negligent "statements, communications, [or] actions," a tortious interference claim cannot succeed. *Cutting Edge Homes*, 103 Mass. App. Ct. at 756. Collegium's tortious interference claim should be dismissed.

3. <u>Collegium Fails to Allege the Existence of a Contractual or Common Law Indemnification Right or Any Basis for Joint Tort Liability.</u>

In the remaining counts, Collegium alleges that it is entitled to indemnification and contribution if it is found liable to Walgreens in the underlying action. ECF No. 38, ¶¶ 84–97. Collegium fails to allege essential elements of both claims, requiring dismissal.

Collegium alleges that it is entitled to both contractual and common law indemnification. *Id.* ¶¶ 85, 89–90. Since a contractual indemnification claim is a form of breach of contract, a plaintiff must allege the existence of a contract containing the indemnification agreement. *Trs. of Bos. Univ. v. Clough, Harbour & Assocs. LLP*, 495 Mass. 682, 686 (2025). No such agreement is alleged to exist between Inmar Rx and Collegium. And for the reasons discussed above, Collegium cannot claim to be a third-party beneficiary of the agreement between Inmar Rx and Walgreens. *See supra* Section III.B.1. Likewise, common law indemnity requires a plaintiff to show that, due to vicarious liability principles, it has been held liable without itself being at fault. *Elias v. Unisys Corp.*, 410 Mass. 479, 481–82 (1991). The Third-Party Complaint nowhere alleges that Inmar Rx

served as Collegium's agent or that Collegium is otherwise standing in Inmar Rx's shoes in the underlying action. It instead alleges that Inmar Rx served as *Walgreens'* agent. ECF No. 38, ¶ 86. Collegium has not alleged sufficient facts to support its indemnification claim under any theory, requiring dismissal.

Collegium's contribution claim fails for similar reasons. The Massachusetts contribution statute applies *only* to joint tortfeasors. Mass. Gen. Laws ch. 231B, § 1; *Elias*, 410 Mass. at 482 ("The right to contribution, unlike the right to indemnity, is based on the shared fault of the joint tortfeasors."). Collegium does not allege what, if any, tort it has jointly committed with Inmar Rx. Collegium also does not allege that it "has paid more than [its] pro rata share of the common liability," § 1(b), nor could it, since common liability has not been established. In the absence of any allegation of joint tort liability on the part of Collegium and Inmar Rx, this claim should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Third-Party Defendant Inmar Rx Solutions, Inc. respectfully requests that the Court dismiss the Third-Party Complaint.

This the 12th day of November, 2026.

By: */s/ Alexandra Arnold*

Alexandra Arnold (BBO #706208)
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, Massachusetts 02111
Tel: (617) 481-0160
aarnold@clohertysteinberg.com

Jason M. Wenker (*pro hac vice forthcoming*)
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
Fax: (336) 734-2652
jwenker@ktslaw.com

*Counsel for Inmar Rx Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2026, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic filing system.

*/s/ Alexandra Arnold*
Alexandra Arnold

*Counsel for Inmar Rx Solutions, Inc.*